**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA E. PINTOS,<br>   *Plaintiff-Appellant,*<br>v.<br>PACIFIC CREDITORS ASSOCIATION;<br>EXPERIAN INFORMATION SOLUTIONS,<br>INC.,<br>   *Defendants-Appellees.* | No. 04-17485<br>D.C. No.<br>CV-03-05471-CW |
| MARIA E. PINTOS,<br>   *Plaintiff-Appellee,*<br>v.<br>PACIFIC CREDITORS ASSOCIATION,<br>   *Defendant,*<br>and<br>EXPERIAN INFORMATION SOLUTIONS,<br>INC.,<br>   *Defendant-Appellant.* | No. 04-17558<br>D.C. No.<br>CV-03-05471-CW<br>ORDER AND<br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted
January 9, 2007—San Francisco, California

Filed April 30, 2009

5039

Before: Mary M. Schroeder, Richard R. Clifton, and
Carlos T. Bea, Circuit Judges.*

Opinion by Judge Clifton;
Dissent by Judge Bea

---

*George P. Schiavelli, who was previously a member of this panel sitting by designation while serving as a United States District Judge for the Central District of California, resigned on October 5, 2008. Judge Bea was drawn by lot to replace him, pursuant to our General Order 3.2(g).

**COUNSEL**

Andrew J. Ogilvie (argued), Kemnitzer, Anderson, Barron, Ogilvie & Brewer, LLP, San Francisco, California, for appellant/cross-appellee Maria E. Pintos.

Daniel J. McLoon (argued), Jones Day, Los Angeles, California, Adam R. Sand and Marc S. Carlson, Jones Day, San Francisco, California, for appellee/cross-appellant Experian Information Solutions, Inc.

Andrew M. Steinheimer (argued) and Mark E. Ellis, Ellis Coleman Poirier LaVoie & Steinheimer, LLP, Sacramento, California, for appellee Pacific Creditors Association.

**ORDER**

The opinion in the above-captioned matter filed on September 21, 2007, and published at 504 F.3d 792, is WITHDRAWN. The superseding opinion shall be filed concurrently with this order. The pending petition for panel rehearing and rehearing en banc is dismissed as moot. The parties may file new petitions as to the opinion for rehearing and rehearing en banc in accordance with the Federal Rules of Appellate Procedure.

**OPINION**

CLIFTON, Circuit Judge:

Maria E. Pintos appeals the district court's summary adjudication of her claims under the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681 et seq. Pintos contends that Pacific Creditors Association ("PCA") violated the FCRA by obtaining, without any FCRA-sanctioned purpose, a credit report on her from Experian Information Solutions, Inc., a credit reporting agency. Pintos also argues that Experian violated the FCRA by furnishing the report to PCA.

The district court granted summary judgment in favor of the defendants, concluding that PCA was authorized to obtain Pintos's credit report under the FCRA, which allows for the furnishing of reports "in connection with a credit transaction involving the consumer . . . and involving the . . . collection of an account of[ ] the consumer." 15 U.S.C. § 1681b(a)(3)(A). The district court determined that the transaction involved the collection of an account, relying upon our decision in *Hasbun v. County of Los Angeles*, 323 F.3d 801 (9th Cir. 2003). We conclude that *Hasbun* is more limited, however. Because the current case involves neither a transaction for which Pintos sought credit nor the collection of a judgment debt, we conclude that § 1681b(a)(3)(A) did not authorize PCA to obtain the credit report on Pintos. Thus, we vacate the judgment of the district court and remand for further proceedings regarding the defendants' liability. We also vacate the district court's order regarding Experian's motion to seal certain documents and remand for consideration under the proper legal standard.

## I.  Background

Police officers found a sport utility vehicle belonging to Pintos parked on the street in San Bruno, California, on May 29, 2002. The vehicle's registration was expired. At police direction, the vehicle was towed, and the towing company, P&S Towing, obtained a lien on the vehicle for towing and impound costs. P&S later sold the vehicle when Pintos failed to reclaim it or pay the outstanding charges. Since the vehicle's sale price did not cover the amount owed, P&S asserted

a deficiency claim against Pintos and later transferred that claim to PCA, a collection agency.[1]

PCA sought and obtained a credit report on Pintos from Experian on December 5, 2002, in connection with its effort to collect on the debt assigned by P&S. Pintos subsequently filed a complaint against PCA and Experian under the FCRA. She alleged that PCA violated the FCRA by obtaining her credit report without any FCRA-sanctioned purpose and that Experian was liable for providing the report to PCA.

PCA and Experian filed separate motions for summary judgment. Both argued that, under 15 U.S.C. § 1681b(a)(3)(A), PCA had a permissible purpose for obtaining Pintos's credit report because it was seeking to collect a debt, the towing deficiency claim. Experian further argued that it was not liable for a violation because it had fulfilled its obligations under 15 U.S.C. § 1681e, which immunizes a reporting agency against FCRA violations by the agency's subscribers so long as the agency takes certain steps.

Pintos filed a cross-motion for partial summary judgment on the issues of permissible purpose and Experian's alleged negligence. She attached to that motion several Experian documents detailing the company's internal procedures for complying with its FCRA obligations. Claiming these documents

---

[1]California Civil Code § 3068.1(a) provides for liens "dependent upon possession for the compensation to which [a] person is legally entitled for towing, storage, or labor associated with recovery or load salvage of any vehicle subject to registration that has been authorized to be removed by a public agency." The statute also allows for lien sales with varying procedures dependant on the value of the vehicle towed and stored. *See id.* §§ 3068.1(b)-3068.1(c). In addition, a tow truck operator with a lien pursuant to § 3068.1 "has a deficiency claim against the registered owner of the vehicle if the vehicle is not leased or leased with a driver for an amount equal to the towing and storage charges, not to exceed 120 days of storage . . . less the amount received from the sale of the vehicle." *Id.* § 3068.2(a).

were confidential and proprietary, Experian filed a motion to seal them.

The district court granted the defendants' motions for summary judgment on November 9, 2004. Citing *Hasbun*, the court agreed that § 1681b(a)(3)(A) permitted PCA to obtain Pintos's credit report. The court denied Experian's motion to seal documents, without explanation.

Pintos filed a timely notice of appeal on December 8, 2004. Experian cross-appealed the district court's denial of its motion to seal on December 9, 2004. It also sought reconsideration by the district court of the denial of that motion. On April 29, 2005, the district court held that it lacked jurisdiction over the matter since Experian already appealed the order to this court. Nevertheless, the court stated that, if it had jurisdiction, it would grant Experian's motion under *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002), and it stayed its prior order on the subject pending the appeal.

## II. Discussion

We review grants of summary judgment de novo. *ACLU v. City of Las Vegas*, 466 F.3d 784, 790 (9th Cir. 2006). Cross-motions for summary judgment are evaluated separately under this same standard. *Id.* at 790-91; *Hoopa Valley Indian Tribe v. Ryan*, 415 F.3d 986, 989-90 (9th Cir. 2005).

### A.    15 U.S.C. § 1681b(a)(3)(A)

**[1]** "Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). Those two goals lie in tension, and the FCRA strikes a balance between them. The Act authorizes credit reporting agencies to "furnish . . . consumer report[s]" because "[c]onsumer reporting agencies have assumed a vital role in

assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. §§ 1681(a)(3), 1681b(a). At the same time, the FCRA "requir[es] credit reporting agencies to maintain reasonable procedures designed to assure maximum possible accuracy of the information contained in credit reports." *Andrews*, 534 U.S. at 23 (citations and internal quotation marks omitted). Importantly for this case, the FCRA permits agencies to furnish credit reports only for "certain statutorily enumerated purposes." *Id.*

The statutory limitation on the furnishing of credit reports is particularly relevant here, as the parties dispute whether PCA had a permissible purpose in obtaining Pintos's credit report. Defendants contend that it did, under 15 U.S.C. § 1681b(a)(3)(A):

> (a) In general
>
> Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> ***
>
> > (3) To a person which it has reason to believe—
> >
> > > (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

[2] To qualify under § 1681b(a), the "credit transaction" must both (1) be "a credit transaction involving the consumer

on whom the information is to be furnished" and (2) involve "the extension of credit to, or review or collection of an account of, the consumer." Concluding that the transaction here involved the "collection of an account," the district court held that the statute authorized PCA to obtain Pintos's credit report. But the district court did not address whether the transaction was "a credit transaction involving" Pintos. That may have been because *Hasbun* did not separately discuss that requirement, but our court has discussed it in other cases and it is clearly set out in the statute.

One decision in which we discussed that requirement was *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000), *rev'd on other grounds*, *TRW, Inc. v. Andrews*, 534 U.S. 19 (2001), in which we addressed whether the plaintiff, a victim of identity theft, was "involved" in credit transactions initiated by an imposter posing as the plaintiff. The imposter had obtained the plaintiff's social security number and birth date and used that information to apply for credit from various companies. *Id.* at 1064-65. The companies in turn requested and obtained the plaintiff's credit report from TRW. *Id.* at 1065. The plaintiff sued TRW, claiming that it furnished her credit report "without reasonable grounds for believing that she was the consumer whom the credit applications involved." *Id.* (internal quotation marks omitted). The district court granted summary judgment in TRW's favor on this claim, ruling that TRW's disclosures "were made for a purpose permissible under § 1681b(a)(3)(A), because the Plaintiff, even against her will, was 'involved' in the credit transaction initiated by the Imposter." *Id.* at 1066.

On appeal, we concluded that the plaintiff was not "involved" in the credit transaction and reversed the summary judgment ruling. We held that the word "involve" in this context had to be read narrowly:

> The district court held that the Plaintiff was involved in the transaction because her [social secur-

> ity] number was used. The statutory phrase is "a credit transaction involving the consumer." 15 U.S.C. § 1681b(a)(3)(A). "Involve" has two dictionary meanings that are relevant: (1) "to draw in as a participant" or (2) "to oblige to become associated." The district court understood the word in the second sense. We are reluctant to conclude that Congress meant to harness any consumer to any transaction where any crook chose to use his or her number. The first meaning of the statutory term must be preferred here. In that sense the Plaintiff was not involved.

*Id.* at 1067. Thus, a person is "involved" in a credit transaction for purposes of § 1681b(a)(3)(A) where she is "draw[n] in as a participant" in the transaction, but not where she is "oblige[d] to become associated" with the transaction. *See id.*

**[3]** Here, Pintos did not participate in seeking credit from the towing company. She owned the car that was towed, so she was not as completely distant from the transaction as the victim of identity theft in *Andrews*, but neither was she a participant in the typical transaction where an extension of credit is requested. She had no contact with P&S or PCA until P&S towed her car. She never asked to have the vehicle towed; P&S simply towed the car by direction of the police then tried to collect the charges. Pintos did not initiate the transaction that resulted in PCA requesting her credit report. As the Seventh Circuit held in *Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005), § 1681b(a)(3)(A) can be relied upon by the party requesting a credit report "only if the consumer initiates the transaction."

**[4]** The requirement that the consumer initiate the transaction is not satisfied simply because the consumer did something that arguably led to the creditor's claim. In *Mone v. Dranow*, 945 F.2d 306 (9th Cir. 1991), a credit report on Mone was obtained by his former employer, who sued Mone

for unfair competition after he quit and established a competing firm. The report was obtained for the purpose of determining whether Mone had sufficient assets to pay a judgment. *Id.* at 308. Arguably, it was Mone's alleged unfair competition that initiated the chain of events, but we held that the request for the report did not qualify as being "in connection with a credit transaction involving the consumer," under § 1681b(a)(3)(A). *Id.*

**[5]** Similarly, that Pintos owned the car that was towed did not mean that she initiated the credit transaction. Like the victim in *Andrews*, Pintos was not a "participant" in the credit transaction, but was "oblige[d] to become associated" with it after her car was towed and the towing deficiency claim arose. *See Andrews*, 225 F.3d at 1067.

**[6]** Our decision in *Hasbun* did not supersede our prior decisions. The holding of that case is properly understood to be that a *judgment* creditor is authorized under the statute to obtain a credit report in connection with collection efforts. *Hasbun*, 323 F.3d 801.

In *Hasbun* a child support enforcement agency obtained a credit report of a father who had fallen behind in paying *court-ordered* child support. We made reference to the "court-ordered" nature of the debt on every page of that decision. We also did so in stating the question posed by the case ("when and how a child support enforcement agency may lawfully obtain the consumer credit report of an individual who has fallen behind in paying *court-ordered* child support") and in summarizing our holding ("We affirm the district court's grant of summary judgment in favor of defendants and hold that child support enforcement agencies need not comply with the certification requirements of 15 U.S.C. § 1681b(a)(4) when seeking to collect *court-ordered* child support."). *Id.* at 801 (emphasis added). We explicitly adopted and quoted extensively from a Federal Trade Commission commentary which made repeated reference to the permissible purpose of

a "judgment creditor" to obtain a credit report. *Id*. at 803 ("[a] *judgment* creditor has a permissible purpose to receive a consumer report on the *judgment* debtor for use in connection with collection of the *judgment* debt") (emphasis added). To be sure, our opinion did not include that qualifier in every statement, but our holding involved a debt that had already been adjudicated. If a debt has been judicially established, there is a "credit transaction involving the consumer" no matter how it arose. The obligation is established as a matter of law, and the statute is satisfied. *Hasbun* extended no further. Application of *Hasbun* to permit a credit report to be obtained to assist the collection of a claim that had not yet been adjudicated is not supported by the logic of that decision nor by our other precedents.

[7] PCA was not a judgment creditor. Its claim against Pintos did not result from a transaction initiated by Pintos. We conclude, therefore, that § 1681b(a)(3)(A) did not authorize PCA to obtain the credit report on Pintos. Accordingly, we reverse the grant of summary judgment in defendants' favor.[2]

B.   *15 U.S.C. § 1681e*

We next consider whether Experian is also liable for any violation of the FCRA committed by PCA. The district court did not reach this issue, as it determined that PCA had a permissible purpose to obtain Pintos's credit report. Experian argues that because 15 U.S.C. § 1681e immunizes it from subscribers' FCRA violations, the statute offers an alternative basis to affirm the summary judgment with respect to its liability.

---

[2]In this appeal of a summary judgment, PCA and Experian argued only that § 1681b(a)(3)(A) authorized PCA to obtain Pintos's credit report. Thus, we need not determine whether PCA had a permissible purpose under any other § 1681b subsection. On remand, Defendants may argue that PCA was authorized to obtain Pintos's report under a different subsection.

A credit reporting agency may be liable for its subscriber's violation when the agency fails to comply with the statutory obligations imposed by 15 U.S.C. § 1681e. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Experian argues that because PCA gave it a "blanket certification" — a written promise to use Experian's credit reports only for permissible purposes — the agency satisfied its statutory obligations under § 1681e. We disagree.

**[8]** Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law. After prospective subscribers "certify the purposes for which [credit] information is sought, and certify that the information will be used for no other purpose," the reporting agency must make "a reasonable effort" to verify the certifications and may not furnish reports if "reasonable grounds" exist to believe that reports will be used impermissibly. 15 U.S.C. § 1681e(a). Under the plain terms of § 1681e(a), a subscriber's certification cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use.[3] Blanket certification can-

---

[3] Experian suggests that *Davis v. Asset Servs.*, 46 F. Supp. 2d 503, 508 (M.D. La. 1998), *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 71 (S.D.N.Y. 1982), and *Hiemstra v. TRW, Inc.*, 195 Cal. App. 3d 1629, 1634 (Cal. Ct. App. 1987) support the contention that blanket certifications will satisfy a credit reporting agency's obligations under § 1681e(a). While these cases hold that credit reporting agencies may rely on blanket certifications rather than having to verify credit requests individually, none provides that a blanket certification by itself is sufficient to satisfy the § 1681e inquiry. *See, e.g., Davis*, 46 F. Supp. 2d at 508 (holding that the defendant complied with the requirements of § 1681e(a) because it obtained a blanket certification *and* because the plaintiff did not submit "any evidence to prove that the [defendant] knew or should have had reason to know that [the subscriber] would access the report for an impermissible purpose"); *Boothe*, 577 F. Supp. at 71 (finding no violation where the primary business of the requesting entity used reports for a permissible purpose and there was "no showing that TRW knew of the improper purpose for the report issued"). Even if Experian did not have to verify PCA's request for Pintos's credit report individually, § 1681e(a) still required proper verification of PCA generally.

not eliminate all genuine issues of material fact with regard to Experian's liability.

### C. Experian's Motion to File Documents Under Seal

[9] Two standards generally govern motions to seal documents like the one at issue here.[4] First, a "compelling reasons" standard applies to most judicial records. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (holding that "[a] party seeking to seal a judicial record . . . bears the burden of . . . meeting the 'compelling reasons' standard"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003). This standard derives from the common law right "to inspect and copy public records and documents, including judicial records and documents." *Kamakana*, 447 F.3d at 1178 (citation and internal quotation marks omitted). To limit this common law right of access, a party seeking to seal judicial records must show that "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178-79 (internal quotation marks and citations omitted).

Second, a different standard applies to "private materials unearthed during discovery," as such documents are not part of the judicial record. *Id.* at 1180. Rule 26(c) of the Federal Rules of Civil Procedure governs here, providing that a trial court may grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

The relevant standard for purposes of Rule 26(c) is whether

---

[4]A third standard covers the "narrow range of documents" such as "grand jury transcripts" and certain "warrant materials" that "traditionally [have] been kept secret for important policy reasons." *Kamakana*, 447 F.3d at 1178 (citation and internal quotation marks omitted). No party asserts that this third standard is relevant here.

" 'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). This "good cause" standard presents a lower burden for the party wishing to seal documents than the "compelling reasons" standard. The cognizable public interest in judicial records that underlies the "compelling reasons" standard does not exist for documents produced between private litigants. *See Kamakana*, 447 F.3d at 1180 (holding that "[d]ifferent interests are at stake with the right of access than with Rule 26(c)"); *Foltz*, 331 F.3d at 1134 ("When discovery material is filed with the court . . . its status changes.").

The "good cause" standard is not limited to discovery. In *Phillips*, we held that "good cause" is also the proper standard when a party seeks access to previously sealed discovery attached to a nondispositive motion. 307 F.3d at 1213 ("when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted"). Nondispositive motions "are often 'unrelated, or only tangentially related, to the underlying cause of action,' " and, as a result, the public's interest in accessing dispositive materials does "not apply with equal force" to nondispositive materials. *Kamakana*, 447 F.3d at 1179. In light of the weaker public interest in nondispositive materials, we apply the "good cause" standard when parties wish to keep them under seal. Applying the "compelling interest" standard under these circumstances would needlessly "undermine a district court's power to fashion effective protective orders." *Foltz*, 331 F.3d at 1135.

[10] Experian wishes to seal documents attached to Pintos's cross-motion for summary judgment. Rule 26(c) does not govern these documents because they are not "private materials unearthed during discovery" but have become part of the judicial record. *Kamakana*, 447 F.3d at 1180. Additionally, the documents do not fall within the *Phillips* exception to the

general presumption of access because Pintos's motion was dispositive.⁵ *See Foltz*, 331 F.3d at 1135 (holding that the *Phillips* exception is "expressly limited to the status of materials . . . attached to a *non-dispositive* motion") (emphasis in original). Consequently, Experian must overcome a strong presumption of access by showing that "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79 (internal quotation marks and citations omitted).

**[11]** Under the "compelling reasons" standard, a district court must weigh "relevant factors,"⁶ base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). A proper analysis is reviewed for abuse of discretion. *Foltz*, 331 F.3d at 1135. An order that fails to articulate its reasoning must be vacated and remanded because "meaningful appellate review is impossible" when the appellate panel has no way of knowing "whether relevant factors were considered and given appropriate weight." *Hagestad*, 49 F.3d at 1434-35 (internal quotation marks omitted).

---

⁵This case differs slightly from *Phillips*, in which a nonparty sought access to court records previously filed under seal. *Phillips*, 307 F.3d at 1209. Here no third party seeks access to previously sealed documents, but this is a distinction without a difference. It is undisputed that a "strong presumption of access to judicial records applies fully to dispositive pleadings." *Kamakana*, 447 F.3d at 1179. Accordingly, whether a third party has sought access is immaterial when a party moves to seal documents already filed with the court. *See id.* at 1179 (holding simply that " 'compelling reasons' must be shown to seal judicial records attached to a dispositive motion").

⁶"Relevant factors" include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad*, 49 F.3d at 1434 (quoting *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 170 (9th Cir. 1990)).

**[12]** The district court's November 9, 2004, denial of Experian's motion to seal offered no explanation for the decision. The explanation provided in the court's April 29, 2005, order denying Experian's motion to alter or amend judgment did not fill the gap. With the case already on appeal, the district court denied Experian's motion on jurisdictional grounds but suggested that it would grant Experian's motion if it still had jurisdiction, staying its prior order to file the documents in the public record pending our resolution of the appeal. According to the district court, *Phillips* would govern the motion and good cause existed for placing Experian's documents under seal.

**[13]** Because the documents at issue here were attached to a dispositive motion, however, *Phillips* does not provide the proper standard. A determination by the district court that good cause exists for sealing Experian's documents does not establish that there are "compelling reasons" to do so. *See Kamakana*, 447 F.3d at 1180 (holding that "a 'good cause' showing . . . will not suffice to fulfill the 'compelling reasons' standard that a party must meet to rebut the presumption of access to dispositive pleadings and attachments"). Instead, the court must decide whether compelling reasons exist to seal the documents. *Foltz*, 331 F.3d at 1135-36. We vacate and remand "for the making of findings in support of an[ ] order on this issue," *Hagestad*, 49 F.3d at 1435, in light of the proper legal standard.

## III. Conclusion

We reverse the district court's summary judgment in favor of defendants and remand for further proceedings. Additionally, we vacate the district court's order denying Experian's motion to seal documents and remand for consideration in light of the proper legal standard.

**REVERSED AND REMANDED; JUDGMENT VACATED.**

BEA, Circuit Judge, dissenting:

The majority concludes that because this case involves neither a transaction for which Pintos sought a loan nor the collection of a judgment debt, 15 U.S.C. § 1681b(a)(3)(A) did not authorize the Pacific Creditors Association ("PCA") to obtain Maria Pintos's credit report or Experian Information Solutions, Inc. ("Experian") to release it. Because I disagree with the majority's conclusion that Pintos's decision to leave her unregistered car on a public street where she knew it might be towed did not "involve" her in a credit transaction, I respectfully dissent.

Title 15, Section 1681b(a)(3)(A) of the United States Code permits a credit reporting agency to furnish a consumer's credit report to a person it has reason to believe "intends to use the information in connection with a *credit transaction involving* the consumer . . . and involving the extension of credit to, or review or collection of an account of, the consumer." Relying on *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000), the majority concludes that because Pintos did not ask for her car to be towed, *ante* at 5049, she was not "involved" in the transaction.

This case bears little resemblance to *Andrews*. In *Andrews*, the plaintiff was a victim of identity theft—she was passive and guiltless, not even negligent. Pintos, by contrast, was no innocent bystander in the chain of events that resulted in her debt to P&S Towing ("P&S"). Pintos chose—for two consecutive years—not to pay the automobile registration fees required by California law. Pintos chose instead to break the law by driving her car on expired tags. *See* Cal. Veh. Code § 4000(a)(1) ("No person shall drive, move, or leave standing upon a highway . . . any motor vehicle . . . unless it is registered and the appropriate fees have been paid. . . ."); *see also id.* § 42001.8 (making it an infraction to violate § 4000). Pintos chose to leave her car on a public street, subjecting it to towing. *See id.* § 22651(o)(1)(A) (permitting law enforce-

ment to tow a car whose registration is six months overdue). And Pintos chose not to pay the fees assessed by P&S or retrieve her car in a timely manner, resulting in the lien sale and deficiency claim. *See* Cal. Civil Code §§ 3068.1, 3068.2 (providing that a towing company has a lien dependent upon possession and a deficiency claim for unpaid towing charges). With all respect both to Pintos and the majority, refusing to pay required vehicle registration fees and parking one's car on a public street *is* asking to have one's car towed.

The majority rightly observes that the fact Pintos's actions resulted in P&S's claim is, alone, insufficient to justify P&S requesting her credit report. In *Mone v. Dranow*, 945 F.2d 306 (9th Cir. 1991), Dranow, Mone's former employer, concluded Mone was engaged in unfair competition by running a rival business, and obtained Mone's credit report in order to determine whether suing Mone might be worthwhile. We held that Dranow did not intend to use the credit report "in connection with a credit transaction involving" Mone. *Id.* at 308 (quoting 15 U.S.C. § 1681b(3)(A) (1982)).

But P&S's relationship to Pintos is more than that of mere prospective litigation adversary; P&S is a creditor entitled to access Pintos's credit report in order to collect the debt. *See Hasbun v. County of Los Angeles*, 323 F.3d 801, 803 (9th Cir. 2003) ("[T]he limited case law addressing this issue has uniformly held that creditors have a permissible purpose in receiving a consumer report to assist them in collecting a debt.").

The moment P&S towed Pintos's car, P&S became Pintos's creditor; Pintos owed P&S a definite, legally recognized debt for the services P&S rendered—loaned—to Pintos until Pintos paid for those services. Under the California Civil Code, when P&S towed Pintos's car at the direction of the San Bruno Police Department, P&S obtained "a lien dependent upon possession for the compensation to which [P&S] is legally entitled for towing, storage, or labor associated with

the recovery or load salvage" of Pintos's vehicle. *See* Cal. Civil. Code § 3068.1. This code section entitled P&S to sell Pintos's car to recover its fees without seeking judicial approval or intervention; the code certainly does not require P&S to obtain a judgment. And any tow-truck operator who has such a lien "has a deficiency claim against the registered owner of the vehicle." *Id.* § 3068.2 (emphasis added). A deficiency claim is a debt. That Pintos's debt was created by operation of law rather than contract is of no moment.

The majority concludes *Hasbun* is inapplicable because that case involved a judgment debt. *See* 323 F.3d at 803-04. But *Hasbun* is not so limited.[1] *Hasbun* concerned child support payments and the *only* way a person becomes obligated to make such payments is through a judicial decree. It does not follow that judicial adjudication is the only way an individual may become obligated as a debtor. The cited California Civil Code sections *automatically* make the owner of a towed vehicle liable for towing charges and *automatically* create a lien and a deficiency claim in favor of the towing company. The towing company has no need to reduce its lien to a court judgment to establish Pintos's obligation to pay. There is a creditor-debtor relationship established by the operation of the lien law regardless whether an action to collect the deficiency is commenced. P&S Towing is thus much more like the judgment creditor in *Hasbun* than the prospective litigation claimant in *Mone*.

---

[1]Indeed, *Hasbun* concluded that judgment creditors have a permissible purpose in obtaining a credit report because such a creditor " 'is in the same position as *any* creditor attempting to collect a debt from a consumer.' " *Id.* at 803 (emphasis added) (quoting 16 C.F.R. § 600, App. at 509 (2002)). The principle that a creditor may access a debtor's credit report in order to collect upon a delinquent account is recognized by both the Federal Trade Commission, 16 C.F.R. Pt. 600, App. at 59, and by the Sixth Circuit, *see Duncan v. Handmaker*, 149 F.3d 424, 427-28 (6th Cir. 1998).

For these reasons, I would affirm the decision of the district court. I concur, however, in part C of the majority opinion.